Filed 7/22/13  P. v. Weisz CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL WEISZ,<br><br>    Defendant and Appellant. | C068196<br><br>(Super. Ct. No. 09F07200) |

Defendant Michael Weisz was charged with murder (Pen. Code, § 187, subd. (a)) and hit and run resulting in death (Veh. Code, § 20001 subd. (a)).  A jury acquitted defendant of murder but convicted him of the hit and run.

Sentenced to the upper term of four years in prison, defendant appeals contending the trial court (1) erred in failing to instruct the jury that he was not guilty of hit and run if he performed the required acts within a reasonable period of time after learning of the accident, and (2) abused its discretion in imposing the aggravated term.  We reject both contentions.

1

FACTS

Defendant and Ross Konkel were drinking at Badlands, a bar in Sacramento. Because of their rude and obnoxious behavior they were asked to leave and were escorted out of the bar by security guards Leroy Fisher and Juan Carlos Osoria. Outside the bar, a verbal confrontation occurred between defendant, Konkel and the guards. Defendant and Konkel left when one of the guards threatened to pepper spray them if they touched either guard. As defendant and Konkel were leaving, defendant found a cup containing liquid and threw it toward the guards, but it did not hit either of them. The guards chased defendant and Konkel off the property.

A little later, defendant and Konkel returned to the bar's parking lot to get defendant's car. Defendant went to the driver's side of his car and Konkel to the passenger's side. As defendant was getting into his car, Fisher, came up behind defendant and tased him in the chest. Konkel came from the passenger's side and pushed Fisher away from defendant. Fisher then tased Konkel, knocking him to the ground. Defendant managed to get into the car, had trouble reaching over and opening the door for Konkel, and the car rolled slowly forward and over Fisher who was either in front of the car or already on the ground, killing him.[1] Defendant and Konkel then drove off. Defendant testified that it did not feel like he had run over anyone and he did not know that he had done so.

Jaime Ramirez is a friend of defendant's. He testified defendant called him sounding panicked, shocked and frantic. Defendant told Ramirez about being tased by a security guard and that at some point he thought he had hit him. Ramirez told defendant that if he and Konkel hit somebody with their car, they needed to call the police. Shortly

---

[1]     Expert testimony established that Fisher was killed by being run over by a slow moving vehicle.

thereafter, Ramirez located defendant and Konkel in defendant's apartment. Defendant was hysterical and he repeated that he had hit the security guard.

While at defendant's apartment, defendant spoke with a 911 operator and told the operator of being attacked by a security guard in the parking lot at the Badlands bar, but he did not mention to the operator that he thought he had hit anyone with his car. The operator told defendant to wait at the apartment for an officer.

Instead of waiting, defendant and Konkel drove away, ending up in San Francisco at a friend's home. Defendant and Konkel turned themselves in to the San Francisco police shortly before noon that day.

Defendant testified, admitting that during the drive to San Francisco he called his sister on his cell phone a little before 2:30 a.m. and "[p]robably" told her that he "might have" hit the security guard with his car. Defendant denied telling anyone that he was aware he had struck Fisher.

DISCUSSION

I

Defendant contends that CALCRIM No. 2140 is fatally flawed. He makes the following argument: "The instructional problem in this case is when [defendant] learned that he injured Fisher. The jury could have found that it was at the time of the accident itself up to some point when they arrived at San Francisco. If the jury found the latter true, that [defendant] did not learn of it until driving north [*sic*], such as when he was informed that the police were looking for him, it was not instructed what it should do with that finding." We do not so read the instruction.

CALCRIM No. 2140, as given, provides that to prove a violation of Vehicle Code section 20001, subdivision (a), "the People must prove that: [¶] 1. While driving, the defendant was involved in a vehicle accident; [¶] 2. The accident caused death of someone else; [¶] 3. The defendant knew that he had been involved in an accident that injured another person or knew from the nature of the accident that it was probable that

3

another person had been injured; [¶] AND [¶] 4. The defendant willfully failed to perform one or more of the following duties: [¶] (a) To stop immediately at the scene of the accident; [¶] (b) To provide reasonable assistance to any person injured in the accident; [¶] (c) To give to the person struck or any peace officer at the scene of the accident all of the following information: [¶] The defendant's name and current residence address; and [¶] [t]he registration number of the vehicle he was driving; [¶] (d) When requested, to show his driver's license to the person struck, or any peace officer at the scene of the accident; [¶] AND [¶] (e) The driver must, without unnecessary delay, notify either the police department of the city where the accident happened or the local headquarters of the California Highway Patrol if the accident happened in an unincorporated area."

CALCRIM No. 2140 further instructs the jury that "[t]he duty to stop *immediately* means that the driver must stop his vehicle as soon as reasonably possible under the circumstances" (original italics); that "[y]ou may not find the defendant guilty unless all of you agree that the People have proved that the defendant failed to perform at least one of the required duties"; and that "[y]ou must all agree on which duty the defendant failed to perform."

Since "[j]urors are presumed to be intelligent persons capable of understanding and correlating jury instructions" (*People v. Brock* (2006) 143 Cal.App.4th 1266, 1277), it would be obvious to them that the duties set forth in CALCRIM No. 2140, 4(a) through 4(d), apply only to a vehicle driver who knows that he or she has injured someone at the scene of the accident, or knew from the nature of the accident that it was probable another person had been injured, it would be similarly obvious to the jurors that the duty described by 4(e) covers the circumstance where the driver does not learn that he or she has injured someone with their vehicle at the scene of the accident, but later learns that such is the case.

4

Therefore, even if the jurors concluded that defendant did not know he had struck Fisher at the scene of the accident, or that he did not know from the nature of the accident that it was probable another person had been injured, and that he only learned that he had done so during the drive to San Francisco, the jurors would have analyzed defendant's conduct under (4)(e), to determine whether without unnecessary delay he informed law enforcement of his or her involvement in the accident. Thus, the jurors were not without guidance if they concluded as defendant hypothesizes that they might have.[2]

II

Defendant contends the trial court abused its discretion by imposing the upper term of four years for the hit and run. This is so, defendant argues, because the aggravating factors found by the court were either a prohibited dual use of a fact or there was lack of substantial evidence to support the existence of the fact. We conclude any possible error is harmless.

A trial court's sentencing decision is reviewed under the abuse of discretion standard. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' [Citation.]" (*Ibid.*)

Here, the court cited the following as factors in aggravation: As a juvenile defendant had two sustained petitions for assault with a deadly weapon (Pen. Code, §

---

**2**    Because defendant's argument is that CALCRIM No. 2140 failed to give the jurors guidance if they concluded he did not learn of his having injured Fisher at the scene of the accident, he makes no argument regarding the sufficiency of the evidence to support a finding of the duty described in 4(e). Of course, such an argument would be difficult to make since defendant had a cell phone and failed to call law enforcement during the drive to San Francisco, but instead waited several hours until nearly noon to turn himself in.

5

245, subd. (a)(1) against his sister and a few months later against his mother[3] (Cal. Rules of Court, rule 4.421(b)(2)).[4]  Defendant's actions were callous as shown by his leaving Sacramento and going to San Francisco "after [he] knew a security guard had been [hit]" (rule 4.421(a)(1)).  Also, professionalism and sophistication were shown by defendant's contacting 911 and giving them false information regarding himself and his involvement in the accident (rule 4.421(a)(8)).

Defendant argues the court's finding of callousness could not be used because it was based upon his leaving the scene of the accident, which is an element of the crime.

Defendant also argues the evidence is insufficient to demonstrate callousness, and to demonstrate professionalism and sophistication.

Notwithstanding any improper use by the trial court of the foregoing factors, it properly relied upon defendant's delinquent adjudications for assault with a deadly weapon, which is conduct constituting a serious felony (Pen. Code, § 1192.7, subd. (c)(23)).  Against these two adjudications, which the court found to be "very disturbing incidents," were the favorable letters submitted on behalf of defendant.  However in noting it had read all of the letters submitted in support of defendant's character, the court stated many of the people who had written them were unaware of defendant's "prior history with law enforcement."  Such comments make it reasonably certain that the court

---

[3]     The petitions were filed pursuant to Welfare and Institutions Code sections 602 (substantive offense) and 707 (probation violation).  The offenses occurred in 1998, the first when he was a month shy of turning 12, the second a few months after he turned 12.  They were each for assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).  In the first assault, the minor attacked his sister with a metal utility knife with a razor blade attached to the end and with a marker construction stake.  She suffered cuts and bruises on her body from the attack.  The second was against the minor's mother after she had asked him to do his homework.  He kicked her several times on both legs, tried to trip her, threw scissors at her, and hit her with a wooden plank.  She had injuries above her elbow and bruises on both shins.

[4]     Hereafter all rule references are to the California Rules of Court.

found the aggravation factors outweighed those in mitigation. Consequently, it is highly unlikely that a remand for resentencing would benefit defendant. Hence, any possible error in considering the other aggravating factors was harmless. (*People v. Williams* (1996) 46 Cal.App.4th 1767, 1783 [remand for resentencing unnecessary where it would be no more than an idle act].)

DISPOSITION

The judgment is affirmed.


NICHOLSON , Acting P. J.


We concur:


BUTZ , J.


MURRAY , J.

7